# EXHIBIT-C

# STATEMENT OF STEPHEN M. KOMIE
# SECRETARY OF THE ILLINOIS STATE BAR ASSOCIATION
# IN SUPPORT OF H.R.1916

Mr. Chairman and Members of the Judiciary Committee:

The Illinois State Bar Association is a private, voluntary association with more than 34,000 members and growing with each law school graduation. The Association has provided professional services to attorneys, referral services to the public, and education to attorneys, the judiciary, and the citizens of Illinois since 1877. We are the oldest bar association of practicing attorneys in Illinois. One of the touch stones of the Illinois State Bar Association is to advise the General Assembly in Illinois and the members of Congress on issues of public importance which bear upon the rights and liberties of the citizens of our great country.

In that regard, the Illinois Bar Association wishes to salute Chairman Henry J. Hyde for his leadership in tackling the issue of civil asset forfeiture. His book on the subject, "Forfeiting Our Property Rights," may be used as a manifesto of the importance of constitutional liberties, rights, and the rule of law. Chairman Hyde has been in the forefront of the debate over reform of a system run amok. We are especially proud of the fact that Illinois lawyers are a part of providing a solution to the terrible injustices resulting from civil asset forfeiture. With Chairman Hyde's leadership and followed by Representative Michael Patrick Flanagan, we are confident this Congress will succeed in providing necessary reform for the protection of the innocent.

Incidentally, Chairman Hyde has been an ISBA member for more than 37 years and practiced law in the community which elected him to Congress. He is uniquely suited to bring forth H.R.1916 because he knows firsthand the treatment innocent persons receive in the federal court. Today we stand in support of Chairman Hyde's efforts and urge continuing reforms which surpass those currently set forth in the Bill. For that reason we wish to bring to your attention the episodes of victims of the zeal of contingent fee law enforcement. As you know, the framers of the Constitution were very mistrustful of placing power in the hands of government and were especially fearful of placing power in the bureaucracy. Our forefathers would be shocked to learn that a person's home and property could be forfeited by the bureaucrats with the blessings of the federal judiciary without a jury ever seeing a witness or hearing any testimony. In 1789, George Washington and Thomas Jefferson would have told you such a thing was unconstitutional. In fact, every person to whom the United States Congress has built a monument and school children are taught to revere would protest this affront to our fundamental Constitutional tenants. However, since 1970, modern Americans have been confronted with draconian forfeiture proceedings. We at the Illinois Bar Association, while supporting law enforcement, stand fast against civil asset forfeiture which fails to provide adequate protections for the innocent and the guilty alike.

All Americans agree that the family farm has been an historic institution since the founding of the

republic. As members of the Committee know, family farms have remained a part of the social fabric, contributed to the agricultural might of America, and have acted as a stable social institution for over 250 years. Many Americans have left their farms to their children resulting in the operation of the farm by one brother or sister on behalf of the non-resident family members. In Illinois, for good reason, the Illinois General Assembly has never authorized the forfeiture of the family farm for growing marijuana. Obviously, marijuana could be grown on a large farm without the knowledge of the absent family members or could be grown by a child without the knowledge of his parents. Certainly, the family farm as an institution should be protected from seizure under those circumstances. Yet 21 U.S.C. 881 authorizes the seizure of real property regardless of the drug involved or the quantity of the drug. So a family farm may be seized and forfeited for less than 5 marijuana plants. This is ironic because the Midwest the federal government had encouraged the planting of hemp for the production of rope for liberty ships and for use by our Navy in World War II. Hence, marijuana grows without cultivation in many parts of the Midwest. Therefore, there are many good reasons why the family farm should not be forfeitable.

SEIZURE WITHOUT NOTICE

Steven and Suzanne Stout are joint owners of a parcel of property commonly referred to as 47 West 644 Route 30, Maple Park, Illinois. In actuality, this parcel is a family farm of which Steve Stout acquired a half interest as a gift from his father Paul. His sister, Holly Accardi, has lived on the family farm with her husband Greg and their three small sons. Steve Stout and his wife Suzanne, and their children live in Grand Rapids, Michigan. They would only come to the Accardi farm over the Christmas vacation and occasionally on Thanksgiving. During these times, they would sometimes hunt pheasant.

On September 15, 1992, members of the Illinois State Police raided the Accardi farm. During the course of the raid, they entered the Accardis' farm without consent to search or a search warrant and began to search the farm before they contacted any of the owners. On the day of the hearing for the motion to suppress evidence, the police officer produced an alleged consent to search form purportedly signed by Gregory Accardi. This form was not in the file of the Illinois State Police. The form was sent to the Springfield laboratory of the State Police. There, Jeanne Brundige, a handwriting expert, employed by the Illinois State Police found Mr. Accardi's signature was a forgery. Mr. Accardi so testified as did a privately retained handwriting expert, Mr. Steven Kane. As the police were certain there would be difficulties with their case in the state court, they turned the matter over to the Drug Enforcement Administration Forfeiture Unit. Since they could not seize and sell the farm by state law, they turned to the callous bureaucracy to take the family farm.

After this storm trooper raid on the Accardi farm, the Stouts never received actual notice that their interest in the farm would be forfeited. An ex parte order was entered in the Federal District Court for the Northern District of Illinois authorizing the seizing of the farm and other property on December 9, 1992. The Stouts received no actual notice of this ex parte proceeding. The Stouts did not receive actual service of the complaint of forfeiture of which was subsequently filed on December 14, 1992 under cause number 92 C 7906. The government instead chose to publish notification in the newspaper the U.S.A. Today. The Stouts do not read this newspaper.

People like the Stouts are deemed innocent owners under the statutes. They had no idea that any contraband was present on the farm as they were only present on the farm during the winter months when no marijuana was or could be grown. The parcel of property has been in Steve Stout's family and he wishes to have the opportunity to pass it on to his children. To do that, he has been forced to retain the services of a Chicago lawyer and contest the ex parte seizure as well as the illegal entry by the police to preserve his and his wife's claim as innocent owners. This has cost him anticipated legal fees of up to $10,000.00 which is a great deal of money for a young family. The property that the Stouts always viewed as a source of solace and relaxation has now become a source of anguish and unforeseen expense.

The lessons to be drawn from the Stout case are notice of the proceedings and the intended forfeiture should be delivered directly to the owner of a property and not published solely in USA Today. Secondly, the family farm should not be subject to seizure under these circumstances which place an ordinary citizen with little resources against the federal government. A federal judge must have discretion to appoint counsel to contest a forfeiture and Chairman Hyde's Bill provides for appointment of counsel. We support this provision. Finally, for the small amount of marijuana involved in this case, the Stouts have been subjected to several years of court proceedings and a demand from the federal government to pay the federal government money to get their farm back or face the risks of trial. We hope this Bill will be amended to prohibit seizure of family farms for marijuana and leave this matter to the states consistent with their public policy.

MAILING NOTICE TO THE WRONG PERSON

Mr. Milton Bryan was walking through the Detroit Metro Airport. He was approached by the Airport DEA Task Force. Mr. Bryan is a black American. He was forced to produce identification and escorted by DEA Task Force members larger than him to their office more than a half-mile away from his boarding gate. There, they went through his carry-on luggage. They discovered $32,000 in United States currency but found no drugs. The officers insisted on taking the money and giving Mr. Bryan a receipt for his money. He then caught his plane to St. Louis where he was met by officers who demanded to search his checked baggage. They discovered no drugs and sent him on his way. One would think our kind federal government would send Mr. Bryan notice they intended to forfeit his money. They did sent notice to Mr. Bryan without restriction of delivery to the addressee only. Another person living in the same housing complex signed for the letter and did not give it to Mr. Bryan until too late. Upon receiving the letter several days late, Mr. Bryan post marked a claim and posted a cost bond which was lost by the Asset Forfeiture Unit of the Drug Enforcement Administration. Mr. Bryan though counsel contacted this unit and attempted to replace the missing cost bond with a second cashiers check from his bank. The Asset Forfeiture Unit refused to accept the replacement cost bond or the good faith efforts of Mr. Bryan to contest the forfeiture of his money.

Mr. Bryan filed a motion under Federal Criminal Rule of Procedure 41(e) to return his property. A federal judge had to vacate a decree of forfeiture due to the absence of proper notice. According to the government it should not make any difference who they deliver the notice to if they live in the same

neighborhood. The lesson to be learned here is Congress should require notice to be delivered to the owner of the property just like any other civil proceeding or require the post office to deliver to the addressee (owner), only. Additionally, Congressman Hyde's Bill places the burden of proof on the federal government and not the claimant. Here Mr. Bryan is being forced to prove the innocent nature of his money in federal court with no burden to prove the money is derived from the drug business. The Illinois Bar Association supports this reform of Chairman Hyde's and encourages its enactment.

## GRANDMA'S BANK ACCOUNTS

Michael Hershman, a bona fide druggist without a license, was indicted for his drug business. Simultaneously, the government filed an asset forfeiture case against every asset in the name of Hershman. Michael Hershman's grandmother, Rachel Levine, had a savings account at Columbia Savings and Loan. The government seized the account in 1990. The account represented the lifetime savings of grandma. Fearing she would die, Grandma made Michael Hershman a beneficiary to her account in the event of death. The Drug Enforcement Administration was extremely insensitive to grandma's estate plan. It took grandma three years and attorneys' fees to get the government to release grandma's money forcing her to live on her social security only. Grandma had no remedy or a federal judge to petition in order to release the account before the trial of the forfeiture action. Once again, Chairman Hyde's Bill provides for a release of property. We, the Illinois State Bar Association, support giving federal judges discretion to release property to innocent owners before the trial. Further, we request Congress state in the legislate purpose of the act the need to protect innocent owners from draconian actions of the bureaucracy. Finally, the Bill should be amended to place mandatory time limits for hearing for innocent owners. In no case should the government avoid a hearing for temporary relief for more than ninety days.

## LIFETIME EARNINGS SEIZED AND FORFEITED WITHOUT A TRIAL

Mr. Anthony Lombardo has owned a pizzeria which has supported him for several decades. Purportedly, an arrested burglar claimed he was selling stolen property on the back steps of the pizza parlor. The Chicago Police Department obtained a search warrant for the crime of receiving stolen property. The police searched the pizzeria and they find flour and pizza but no stolen property. However, Mr. Lombardo kept his savings in a barrel. The police seized $506,000.00 in United States currency in small bills. The police took the money to the Police Station. Since they found no drugs at the pizza parlor, they called for a dog to sniff the drugs. They claim the dog alerted to the presence of drug on currency. They then deposited the money in a national bank. They paid no attention to the scientific research which demonstrates the money supply in the United States is contaminated by the rollers in the Federal Reserve Bank System. On this evidence alone, the Chicago Police justified the seizure of the money. Mr. Lombardo had no criminal record and no history of investigations for drug activities. So Mr. Lombardo comes to court in the Circuit Court of Cook County, Illinois. He filed a motion to return his property to him. The Chicago Police, well aware of the continent fee law enforcement, authorized by 21 U.S.C. 881 called the Drug Enforcement Administration Asset Forfeiture Unit. The United States filed a case in federal court obtaining a warrant for the money although Mr. Lombardo was before a state court judge attempting to obtain his property.

A week later a state court judge ordered the return of the money to Mr. Lombardo. The government obtains an order from a federal judge requiring him to bring the check given to him by the state court to the federal building and handed over to the U.S. Marshall. This was only the beginning of Mr. Lombardo's travail to obtain his property. The federal judge assigned to Mr. Lombardo's case refused to give Mr. Lombardo a hearing on a motion to dismiss for lack of jurisdiction, on a motion to suppress evidence seized, or on a motion to suppress evidence on the grounds the application for the search warrant was a fraud, and granted summary judgment in favor of the government without Mr. Lombardo and the judge ever laying eyes on each other. Mr. Lombardo was never afforded a contested probable cause hearing as the court found the ex parte determination of a magistrate to issue a seizure warrant was sufficient to avoid the requirement of a trial. It is clear Mr. Lombardo got the least amount of due process our government could provide for him. As we said earlier, the founders of our country would be shocked and saddened to learn Mr. Lombardo's property could be seized and forfeited without a trial or a judge ever holding a hearing in open court. The lesson to be gleaned here is that a person can be stripped of their property without ever having a hearing a federal court. This case was decided solely on the paper filed and not the evidence heard by the court. Chairman Hyde's Bill takes a great step forward in shifting the burden back to the government to prove by clear and convincing evidence the criminality of the property. This will avoid the dire consequences suffered by Mr. Lombardo. The Bill should be amended to prohibit summary judgment and require hearings on motions to suppress evidence illegally seized. Cases like Mr. Lombardo's can only erode the confidence of the American people in the federal courts, their justice department, and their police agencies. Therefore, Chairman Hyde, we call upon you to strengthen the procedures to protect the liberties and property ownership of our people.

The Illinois State Bar Association encourages and promotes the enactment of legislation which restores due process and protects the rights of the innocent and the guilty alike. We stand ready to assist this Committee and its staff in the passage of H.R.1916. We wish to thank you for the opportunity to appear here today and express our views. Please call upon us to assist you. We also ask that anyone interested in this issue and other legal issues contact us at our Internet address at http://www.illinoisbar.org. Thank you.

Judiciary Homepage