Westlaw.

Slip Copy
Slip Copy, 2007 WL 2323307 (N.D.Ill.)
(Cite as: 2007 WL 2323307 (N.D.Ill.))

Page 1

U.S. v. **Funds** in the **Amount** of Forty-FiveThou-sandFiftyDollars ($45,050.00)
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern Division.
UNITED STATES of America, Plaintiff,
v.
**FUNDS** IN THE **AMOUNT** OF FORTY-FIVETHOUSANDFIFTYDOLLARS ($45,050.00), Defendant.
No. 06 C 6948.

Aug. 9, 2007.

Marsha A. McClellan, United States Attorney's Office, Chicago, IL, for Plaintiff.

### MEMORANDUM OPINION AND ORDER

REBECCA R. PALLMEYER, United States District Judge.
*1 The United States filed this action seeking forfeiture of $45,050 in currency seized from an Amtrak Train Passenger in June 2006. Jason Haltiwanger and his attorney, Steven Komie (hereinafter, "Claimants"), move to dismiss the government's complaint for failure to meet the heightened standards required in pleading a civil forfeiture action.[FN1] For the reasons set forth below, the motion is denied.

> FN1. The government has expressed skepticism as to whether Haltiwanger's attorney has standing to proceed in this action. *See* Government's Response to Claimants' Motion to Dismiss Complaint, at 2-3 n. 2-3. As the government has not formally moved to strike counsel's claim, however, the court declines to address the issue of attorney standing at this time.

### FACTS

On June 14, 2006, Federal Drug Enforcement Agency agents at Amtrak Union Station in Chicago conducted a routine review of Amtrak's computerized travel manifest. (Complaint ¶ 6.) During their review, officers saw that on June 13, 2006, an individual named Jason Haltiwanger had paid cash for a one-way ticket from Boston, Massachusetts, via Albany, New York and Chicago, to Austin, Texas. (*Id.*) The train was scheduled for departure on June 14. (*Id.*)

At approximately 2:50 p.m. on June 14, officers boarded the train on which Haltiwanger was a passenger in Chicago. (Complaint ¶ 7.) The officers identified themselves to Haltiwanger as federal agents and received Haltiwanger's permission to interview him. (*Id.*) Haltiwanger informed the agents that he was carrying $30,000 in cash and that he was a construction contractor traveling to Austin, Texas to purchase property. (*Id.*) Haltiwanger also gave the agents permission to search the carry-on luggage located in his compartment. (Complaint ¶ 8.)

Inside Haltiwanger's luggage, agents discovered a plastic bag that contained two paper bags filled with United States currency. (*Id.*) While he was still on the train, Haltiwanger told agents that the cash had been withdrawn from his bank account. (*Id.*) After the search, Haltiwanger was taken to the DEA office in Union Station and interviewed again. (Complaint ¶ 9.) During this interview, Haltiwanger again asserted that the currency was to be used to purchase property. (*Id.*)

At some point during these events, DEA agents brought a DEA canine named Rudy to "the location." [FN2](Complaint ¶ 10.) Rudy has been trained to detect cannabis, cocaine, hashish and heroin. (*Id.*) He has performed more than twenty narcotics searches and is certified annually by the DEA. (*Id.*) At the time he inspected Haltiwanger's luggage, Rudy had last been certified on February 2, 2006. (*Id.*) Once he was brought to the "location," Rudy

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy
Slip Copy, 2007 WL 2323307 (N.D.Ill.)
(Cite as: 2007 WL 2323307 (N.D.Ill.))

Page 2

reacted positively to the currency contained in Haltiwanger's carry-on luggage.(*Id.*)

> FN2. From the government's complaint, it is unclear at what point after Haltiwanger's luggage was searched that Rudy was brought in to inspect it. In addition, it is unclear whether the "location" in which Rudy's inspection occurred was Haltiwanger's train compartment, the Union Station DEA office, or some other location in the train station. (Complaint ¶ 10.)

Agents subsequently seized $45,050 in $5, $10, $20, $50 and $100 bills from Haltiwanger's carry-on luggage. (Complaint ¶ 11.) On December 15, 2006, the government filed this action for forfeiture, asserting there is probable cause to believe that the funds were furnished and intended to be furnished in exchange for a controlled substance, are the proceeds from the sale of a controlled substance, and were monies used and intended to be used to facilitate narcotics trafficking, in violation of 21 U.S.C. § 801 *et seq.*, and are therefore subject to forfeiture and condemnation pursuant to 21 U.S.C. § 881(a)(6). (Complaint ¶ 12.) Haltiwanger and his attorney now move to dismiss the government's complaint, claiming that the government has failed to state a cause of action for forfeiture.

*DISCUSSION*

**1. Motion to Dismiss Standard**

*2 Under traditional "notice pleading" standards, a complaint "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus,* --- U.S. ----, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (*per curiam* ) (quoting *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)). Claimants here contend, however, that the complaint should be tested not against notice pleading standards, but rather by the heightened pleading standards applicable to civil forfeiture claims. (Claimants' Motion to Dismiss (hereinafter "Motion to Dismiss") ¶¶ 1, 6.) They further contend that the government has not adequately pleaded a claim of forfeiture under these standards, which are set forth below.

**2. Pleading Standard for Forfeiture Claims**

The relevant statute, 21 U.S.C. § 881, provides that money which is "furnished by any person in exchange for a controlled substance," money which is "traceable to such an exchange," or money which is "used or intended to be used to facilitate a violation of this subchapter"[FN3] is subject to forfeiture. *See* 21 U.S.C. § 881(a)(6). In an action for civil forfeiture, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture. "Civil Action Forfeiture Act of 2000 (hereinafter "CAFRA"), 18 U.S.C. § 983(c)(1). Courts have held that CAFRA's "preponderance of the evidence" standard has replaced the "probable cause" standard adhered to in pre-CAFRA cases. *See, e .g., United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars,* 403 F.3d 448, 454 n. 4 (7th Cir.2005). In addition, "if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense or was involved in the commission of a criminal offense, the government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

> FN3. Chapter 13 of Title 21 of the United States Code-the chapter that contains 21 U.S.C. § 88-is entitled "Drug Abuse Prevention and Control." The relevant subchapter is entitled "Control and Enforcement."

In pleading a civil action for forfeiture, "the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims ..." *See* 18 U.S.C. § 983(a)(3)(A). *See also* 21 U.S.C. § 881(b).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2323307 (N.D.Ill.)
(Cite as: 2007 WL 2323307 (N.D.Ill.))

Page 3

Rule G of these Supplemental Rules requires that a civil forfeiture complaint must: (a) be verified; (b) state the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the defendant property, and venue; (c) describe the property with reasonable particularity; (d) if the property is tangible, state its location when any seizure occurred and-if different-its location when the action is filed; (e) identify the statute under which the forfeiture action is brought; and (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. Supplemental Rule G(2)(a-f); *see also* Supplemental Rule E(2)(a) ("the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading"). Finally, "no complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a) (3)(D); *see also* Supplemental Rule G(8)(b)(ii).

### 3. Claimants' Motion to Dismiss

*3 Claimants make several arguments concerning the allegations in the Government's complaint. First, they assert that the Government's complaint must establish a "reasonable basis" that Haltiwanger's property is subject to forfeiture. (Motion to Dismiss ¶ 3.) *See also* Supplemental Rule G(2)(f). Claimants argue that this requires the Government to plead facts which show "probable cause" for forfeiture. (Motion to Dismiss ¶ 4 (citing *United States v. $ 9,800*, 952 F.Supp. 1254, 1259 (N.D.Ill.1996).) As explained earlier, however, CAFRA's "preponderance of the evidence" standard replaced the "probable cause" standard when the statute was passed in 2000. *See Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d at 454 n. 4. As a result, courts have ruled that "it is a bit awkward to say that [the Supplemental Rule] requires the complaint to allege facts suffi-

cient to support a reasonable belief that the government can establish probable cause for forfeiture at trial." *United States v. Mondragon*, 313 F.3d 862, 865 (4th Cir.2002). Instead, courts evaluate the adequacy of forfeiture complaints under the Rule G and Rule E(2)(a) specificity standards, "keeping in mind that the complaint must at bottom allege facts sufficient to support a reasonable belief that the property is subject to forfeiture." *Id.* at 865-66; *see also Supplemental Rule* G(2)(f) (a complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial"). Thus, Claimants are correct that the government in this case is required to meet a heightened pleading standard. In post-CAFRA cases such as this one, the government must show more than probable cause; it must present facts supporting a reasonable belief that it can meet its burden of proof at trial. This court will evaluate the Government's complaint under this heightened standard.

Claimants argue the government has failed to meet this standard because (1) it has failed to allege a substantial connection between the seized currency and illegal activity; (2) it has failed to allege facts affording a reasonable belief that it will succeed at trial; and (3) it has failed to meet the specificity pleading standards set forth in Supplemental Rules G and E. The court will address each of these arguments individually.

### A. The Government Has Alleged a Substantial Connection Between the Seized Currency and Criminal Activity

Claimants argue, first, that the government "fails to allege an act or acts giving rise to a cause of action with 'a substantial connection between the property and the offense' " as required by 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 983(c)(3). (Motion to Dismiss ¶ 7.) In support of this argument, Claimants assert that the dog sniff does not establish a substantial connection between the currency and illegal narcotics, and that the complaint does

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2323307 (N.D.Ill.)
(Cite as: 2007 WL 2323307 (N.D.Ill.))

Page 4

not allege that any narcotics transaction (or other criminal action) took place. (Motion to Dismiss ¶¶ 5, 8, 9, 13.)

*4 Contrary to Claimants' assertion that "the probative value of a dog sniff is at most minimal," (Motion to Dismiss ¶ 5 (citing *United States v. $506, 231 in United States Currency*, 125 F.3d 442, 453 (7th Cir.1997))), dog sniff evidence is entitled to significant weight in the Seventh Circuit. In the case relied upon by Claimants, the Seventh Circuit overturned a grant of summary judgment to the United States in a case where the government sought forfeiture of $500,000 found hidden in a pizzeria. *$506,231*, 125 F.3d at 444. In its ruling, the court noted that none of the evidence offered by the government was sufficient to establish that the money was subject to seizure. *Id.* at 452-53. Specifically, the court stated that it was "unwilling to take seriously" the evidence of a drug dog's positive reaction to the currency. *Id.* at 453. This conclusion was guided by the court's understanding that "... no one can place much stock in the results of dog sniffs because at least one-third of the currency in the United states is contaminated with cocaine in any event." *Id.*

If this ruling still represented the law in the Seventh Circuit, Claimants might be correct in their assertion that the government's allegations of a positive dog sniff by themselves are not sufficient to state a "substantial connection" between the seized currency and narcotics under 18 U.S.C. § 983. The ruling in *$ 506, 231*, however, was called into question, if not overturned, by the ruling in a more recent Seventh Circuit case. In *Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars*, the Seventh Circuit upheld a district court's grant of summary judgment to the government in a forfeiture action, where a positive dog sniff was the most important evidence offered to establish a "substantial connection" between the seized currency and illegal narcotics. 403 F.3d at 467. In its ruling, the court rejected its earlier position that dog sniff evidence was not entitled to probative weight,

*Id.* at 459, and engaged in a lengthy discussion of the scientific evidence supporting the validity of such evidence. Specifically, the court found persuasive the findings of several scientists who concluded that drug dogs react not to the smell of cocaine itself (which they acknowledged does contaminate much of the county's currency), but to the smell of a chemical that is released by cocaine. *Id.* at 458-60. This chemical is only found on bills that have recently been in the proximity of cocaine. *Id.* As a result, the court concluded, "the totality of the circumstances, especially [the dog's] alert to Calhoun's cash, leads us to conclude that reasonable jurors would agree that it is more likely than not that Calhoun's cash is subject to forfeiture." *Id.* at 455.

In light of the holding in *Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars*, this court rejects Haltiwanger's contention that Rudy's alert to the seized currency does not sufficiently allege a "substantial connection" between the currency and narcotics.[FN4] While these allegations alone may not be enough to conclusively establish such a connection, when taken as true, they are sufficient to survive a motion to dismiss.

> FN4. Notably, *$506,231* is distinguishable on other grounds. The drug dog in that case identified narcotics on only one bundle of seized currency, even though officers seized 31,392 bills in multiple bundles. 125 F.3d at 453. In addition, *$506,231* involved a large quantity of cash seized from a pizzeria, a cash-driven business. In this case, in contrast, Haltiwanger attempted to explain the amount of cash in his luggage by telling agents that he intended to use it to purchase property, a transaction unlikely to be made with small-denomination bills.

*5 Similarly, the government's complaint does not fail because it has not alleged "any act whereby a controlled substance was exchanged for the currency seized." (Motion to Dismiss ¶ 10.) Numerous

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2323307 (N.D.Ill.)
(Cite as: 2007 WL 2323307 (N.D.Ill.))

Page 5

courts have held that the government need not trace seized property back to a specific illegal transaction in order to meet its burden of proof at trial. *See, e.g., United States v. United States Currency Deposited in Account No. 11 15000763247 for Active Trade Co.,* 176 F.3d 941, 944 (7th Cir.1999) (citing cases) (upholding the forfeiture decree of the district court in a case where funds were seized from a bank account that had been used for fraudulent activity); *United States v. Eighty-Seven Thousand Sixty Dollars,* 23 F.3d 1352, 1354 (8th Cir.1994) (affirming forfeiture decree where government agents seized cash from the claimant's safe deposit box and home on suspicion that he was involved in the drug trade); *United States v. One 1996 Lexus LX450,* No. 97 C 4759, 1999 WL 617686, at *4 (N.D.Ill. Aug.10, 1999) (denying claimant's motion for summary judgment in a case where his Lexus was seized because the government had probable cause to believe it was purchased in connection with illegal narcotics). It need only establish that the currency had a "substantial connection" to narcotics. *Active Trade Co.,* 176 F.3d at 944 ("the government need not make an actual showing of illegality, but must only show a probability or substantial chance of criminal conduct"). As has already been discussed, the government's allegations that Rudy reacted positively to the seized currency are sufficient to indicate such a connection for purposes of a motion to dismiss.

**B. Government Has Alleged Facts Sufficient To Provide A Reasonable Belief That It Will Succeed At Trial**

Claimants next argue that allegations that Haltiwanger fits a drug courier profile, combined with the dog-sniff evidence, do not afford a reasonable belief that the government will meet its burden of proof at trial, as required by Supplemental Rule G(2). (Motion to Dismiss ¶¶ 12, 14.) This court finds Claimants' argument unpersuasive. As discussed above, in order to meet its burden of proof at trial, the government "must establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). This requires the government to establish that there was a substantial connection between the property and unlawful activity. 18 U.S.C. § 983(c)(3). This court has already ruled that the dog-sniff evidence in this case adequately alleges a substantial connection between the seized currency and illegal narcotics. Moreover, the other facts set forth in the government's complaint, namely those concerning Haltiwanger's travel arrangements, the amount of cash he was carrying, and his explanation for that cash, all contribute to the reasonableness of the belief that, at trial, the government will be able to meet its burden of establishing that the property is subject to forfeiture.

*6 In support of their argument that the allegations concerning the circumstances of Haltiwanger's travel arrangements do not establish an adequate case for forfeiture, Claimants cite to a footnote in *United States v. $ 84,000 in U.S. Currency,* 717 F.2d 1090, 1099 n. 10 (7th Cir.1983), which states "[ (a) ]lthough we recognize that the mere fact that an individual fits a drug courier profile is not sufficient to constitute reasonable suspicion for Fourth Amendment purposes, this fact coupled with other suspicious circumstances may provide the reasonable grounds for suspicion required for a reasonable search or seizure."[FN5] In the court's view, this language supports the government's position, not that of the Claimants. The complaint before the court sets forth allegations that support he inference that Haltiwanger fits a drug courier profile. Specifically, the government has alleged a last-minute train ticket purchase, a horde of currency in small denominations, and an explanation (the plan to purchase property) of marginal plausibility. *See, e.g., United States v. Finke,* 85 F.3d 1275, 1282 n. 4 (7th Cir.1996) (citing cases describing different types of behavior that led to reasonable suspicion of drug activity).[FN6] While these allegations may not be dispositive, courts evaluating forfeiture cases look to the "totality of the evidence," in determining whether a complaint has set forth a reasonable belief that the government can prevail at trial. *See*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2323307 (N.D.Ill.)
(Cite as: 2007 WL 2323307 (N.D.Ill.))

Page 6

*Funds in the Amount of Thirty Thousand Sixty Hundred Seventy Dollars,* 403 F.3d at 455; *see also United States v. $252,300 in United States Currency,* 484 F.3d 1271, 1274-75 (10th Cir.2007) (upholding trial court's finding of forfeiture in a case where money was found in a secret compartment, and both state troopers and drug dogs alerted to the smell of marijuana); *Mondragon,* 313 F.3d at 866-67 (allegations that police found cash in secret compartment of woman's car, combined with a positive dog sniff, "permit a reasonable belief for pleading purposes that the currency was the proceeds of drug trafficking and was therefore subject to forfeiture"). In *United States v. Funds in the Amount of $29,266,* 96 F.Supp.2d 806, 811 (N.D.Ill.2000), the court denied a motion to dismiss where the claimant had fled from guards at Midway Airport after they discovered he was carrying large amounts of cash. The court recognized that "possessing large amounts of cash, by itself, is not enough to establish illegal activity," but held that the government's allegations concerning the other suspicious circumstances surrounding the seizure were adequate to survive a motion to dismiss. *Id.* In this case, similarly, the government's allegations of suspicious behavior, coupled with the dog-sniff evidence, are sufficient to support a reasonable belief that the government will be able to prevail at trial.

FN5. In that case, the defendant in a civil forfeiture case appealed the court's verdict in favor of the government, arguing, in part, that district court erred in determining that the seized money was subject to forfeiture. 717 F.2d at 1094. The Seventh Circuit upheld the trial court's verdict, noting that the government had properly met its burden of showing probable cause for the forfeiture proceedings. *Id.* at 1101.

FN6. The *Finke* court upheld the defendant's drug conviction upon finding that law enforcement officials had a reasonable basis for detaining the defendant and searching his vehicle during a traffic stop. 85 F.3d 1281-82.

Claimants also argue that the government's complaint should be dismissed because it fails to allege that Haltiwanger made inconsistent statements to the police, or that the government has conducted an investigation of his background. (Motion to Dismiss ¶¶ 15-16.) In light of CAFRA's instruction that "no complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property[,]"18 U.S.C. § 983(a)(3)(D), this court declines to dismiss the government's complaint on these grounds. As has been discussed at length above, the government's complaint need only set forth facts sufficient to afford a reasonable belief that it will succeed at trial. The facts alleged in the government's complaint meet this standard, even absent the types of allegations described in Claimants' motion to dismiss.

**C. The Government Has Complied With The Specificity Requirements For Pleading A Civil Forfeiture Claim**

*7 Finally, Claimants argue that the government has failed to "plead facts which establish the who, what, where and how demonstrating a reasonable basis to believe the currency is forfeitable pursuant to 21 U.S.C. § 881(a)(6), and 21 U.S.C. § 983(c) and in accordance with Supplemental Rules G and E." (Claimants' Reply to Plaintiff's Answer to the Motion to Dismiss at 8.) This argument ignores the plain language of the complaint, which is verified by affidavit. As described above, the allegations do identify the date, time and location of the seizure; describe the amount of money seized; and set forth the reasons for the seizure. (Government's Response to Claimants' Motion to Dismiss Complaint at 3-4.) These allegations are adequate to allow Mr. Haltiwanger, "without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."*See* Supplemental Rule E(2). They also support a reason-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2323307 (N.D.Ill.)
(Cite as: 2007 WL 2323307 (N.D.Ill.))

Page 7

able belief that the government will be able to meet its burden of proof at trial.

## CONCLUSION

For the reasons set forth above, Claimants' motion to dismiss (12) is denied.

N.D.Ill.,2007.
U.S. v. Funds in the Amount of Forty-Five Thousand Fifty Dollars ($45,050.00)
Slip Copy, 2007 WL 2323307 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.