IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>     )<br>     Plaintiff,     )<br>  vs.   )<br>     )<br>FUNDS IN THE AMOUNT OF ONE HUNDRED )<br>THIRTY-ONE THOUSAND FIVE HUNDRED )<br>DOLLARS, ($131,500.00) in U.S. CURRENCY, )<br>AND TWO HUNDRED TWENTY-TWO )<br>AMERICAN EXPRESS TRAVELER'S CHECKS )<br>IN THE AMOUNT OF ONE HUNDRED )<br>ELEVEN THOUSAND DOLLARS, ($111,000.00) )<br>     )<br>     Defendant.     )<br>_____)<br>     )<br>RICHARD LYNCH and )<br>STEPHEN M. KOMIE, )<br>     )<br>     Claimants.     ) | No. 08 C 1377<br><br>Hon. Matthew F. Kennelly<br>District Judge, presiding.<br><br>Hon. Martin C. Ashman,<br>Magistrate Judge |

**CLAIMANTS' REPLY TO PLAINTIFF'S ANSWER TO
THE MOTION TO DISMISS**

NOW COME the Claimants, RICHARD LYNCH, by and through his attorney, STEPHEN M. KOMIE of KOMIE AND ASSOCIATES and STEPHEN M. KOMIE, *pro se*, and present their reply to the Plaintiff's Answer to the Claimants' Motion to Dismiss. In support thereof, the Claimants state as follows:

**I. Introduction**

On May 5, 2008 the Claimants filed a motion to dismiss the verified complaint for forfeiture pursuant to Federal Rule of Procedure 12(b)(6). Claimants cited 18 U.S.C. § 983(c)(3) as the basis for their motion. Specifically, Claimants argued the verified complaint fails to state a cause

of action because the government does not allege an act or acts giving rise to a cause of action with "a substantial connection between the property and the offense" under 21 U.S.C. § 881 (a)(6) and probable cause. Motion to Dismiss at ¶ 7.

On June 17, 2008, the government filed its answer to the motion to dismiss. The government ignored issues raised entirely, or in the alternative, answered issues not even raised in the motion. For example, the government ignores the argument, recent Seventh Circuit precedent suggests the Court should conduct a more rigorous testing of the government's complaint. In answer, the government just reiterates the allegations in the Complaint and then in a conclusory fashion states the Defendant *Res* is subject to forfeiture. Moreover, the government's answer is replete with citation to unpublished, non-precedential case law. While it is generally understood by private counsel adherence to the rules is mandatory, apparently the rules just don't apply to the government. The Court should ignore all references to these unpublished, non-precedential citations and grant the motion to dismiss.

## II. Argument

**A. The government's argument ignores the key argument raised in Claimants' Motion to Dismiss.**

In an overly zealous attack on the motion to dismiss, the government apparently searched the court files for other cases involving claimant's counsel, Komie and Associates. The government then claims other judges of the Northern District have denied "similar" motions to dismiss implicitly arguing this Court should do the same.

This tactic is not only superficial, but also factually and legally flawed. For example, a brief review of *United States v. Funds in the Amount of Forty Thousand Dollars*, 2004 WL 2191576

(N.D.Ill. 2004), reveals there were narcotics and currency at issue in the case.[1]  Thus, on its face, the cases are readily distinguishable. Moreover, contrary to the government's assertion, the motion to dismiss filed over four (4) years ago in *$40,000* bears little resemblance to the present Motion at Bench.  Substantial changes in the law have occurred such that a comparison between the motions is pointless.  This will be explained more fully below.

The only notable observation from reference to *$40,000,* at all, is the government's boundless, overly zealous advocacy.  It is hard to imagine any good faith basis to cite this off-point, unpublished, non-precedential slip opinion. The Court should ignore this argument and force the government to conduct itself as any other private advocate in the Dirksen building is required to do; namely, support its argument with citation to binding, published authority.

Moving on to the second argument, the government's tactic is again belied by the facts.  The government claims a motion to dismiss filed in *United States v. Funds in the Amount of Forty-Five Thousand, Fifty Dollars*, 2007 WL 2323307 (N.D. Ill.), is nearly identical to the present Motion, and thus, the Court should rule as Judge Pallmeyer did.  This argument is simply wrong.  The motion to dismiss in *$45,050* is legally distinct from the Motion in this case.  For example, when deciding the motion to dismiss, Judge Pallmeyer did not have the benefit of the decisions from past term of the United States Supreme Court and the Seventh Circuit.

The Motion to Dismiss at Bench argues a change in the law has occurred, recently marked by the Seventh Circuit in *Smith v. City of Chicago*, 524 F.3d 834, 839 (7th Cir. 2008).  The appellate

---

[1] Although Claimants contend *$40,000* is irrelevant to this matter, to the extent the Court were to consider *$40,000*, the Court should be aware there is a pending motion to suppress and quash arrest in the forfeiture matter.  Further, the criminal marijuana case has been dismissed because the Circuit Court of Cook County granted Defendant's motion to suppress, finding, the DEA task force agents at Union Station had "zero" probable to search Mr. Simonds' luggage. *See* attached Group Exhibit A, Motion for Full Faith and Credit and 11/08/07 Minute Order.

court stated, *Smith* signals a "reversal in course." *Id*. Claimants also pointed out the case was circulated to all circuit court judges and that no judge voted to rehear the matter *en banc*. *Id*. Thus, unlike a standard panel opinion, this additional step suggests the entire appellate court is in agreement with the opinion, and signals district courts to take special notice of it. Despite this noteworthy development, the government ignores this precedent completely. Instead, it urges the Court to follow the non-binding holding in *$45,050*. However, because *Smith* was decided just last month, Judge Pallmeyer did not consider *Smith* when she denied the motion.

Another significant legal argument not raised in *$45,050* has been the increased scrutiny given to complaints alleging fraud. Claimants urge the Court to analogize the standards for pleading a currency forfeiture with a complaint alleging fraud under Rule 9(b). *See e.g., Lachmund v. ADM Investor Services, Inc.,* 191 F.3d 777, 782 (7th Cir. 1999); *cf.* FRCP Supp AMC Rule E(2)(a); *See generally, Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499 (2007). On this basis, Claimants suggested the Court to consider the trend in currency forfeitures is to subject the complaint to increased scrutiny.

This trend for increased scrutiny of complaints is demonstrated by two, recent decisions of the Supreme Court. *See e.g.*, *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007); *Tellabs, Inc.,* 127 S.Ct. 2499.

Although, *Twombly* arose out of a Sherman Act complaint, the seminal point in the case is the rejection of the liberal *Conley* standard for reviewing the specificity of the facts pleaded in a complaint.[2] *Bell Atlantic Corp.*, 127 S.Ct. at 1969. To this point, the Court stated,

---

[2] At least two of the government's citations relied on the now rejected *Conley* standard. *See e.g., United States v. $50,040 in U.S. Currency*, 2007 WL 1176631 (N.D. Cal. 2007); *United States v. Funds in the Amount of $122,500*, 2000 WL 984411 (N.D. Ill.2000).

4

>We could go on, but there is no need to pile up further citations to show that *Conley's* "no set of facts" language has been questioned, criticized, and explained away long enough. To be fair to the *Conley* Court, the passage should be understood in light of the opinion's preceding summary of the complaint's concrete allegations, which the Court quite reasonably understood as amply stating a claim for relief. But the passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, this famous observation has earned its retirement. *Id.*, referencing, *Conley v. Gibson*, 355 U.S. 41 (1957).

*Twombly* is of unique importance to this district because of the standard chosen by the Court. *Twombly* borrowed the language of Judge Posner and determined the standard for pleading under Federal Rule of Civil Procedure 8 is, whether a complaint states sufficient facts to make relief plausible. *Id*. at 1965. *See e.g., Asahi Glass Co. v. Pentech Pharmaceuticals, Inc*., 289 F.Supp.2d 986, 995 (N.D.Ill.2003)(Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

The *Tellabs* decision is also noteworthy. In that case the Supreme Court held, plaintiffs in securities fraud cases must allege facts giving rise to a "cogent and compelling" inference of scienter. *Tellabs*, 127 S.Ct. at 2509-10. Understanding this decision rested on a specific requirement imposed by Congress, it is still analogous to the case at Bench. It suggests, when Congress requires additional particularity in pleading, the Supreme Court mandates the requirements are met. *Id*. at 2510 ("But in § 21D(b)(2), Congress did not merely require plaintiffs to 'provide a factual basis for [their] scienter allegations,'. . . Instead, Congress required plaintiffs to plead with particularity facts that give rise to a 'strong'- i.e., a powerful or cogent-inference.")(citations omitted.)

The final development in the law is *Cuellar*. Subsequent to the filing of the motion to dismiss, the United States Supreme Court authored another opinion substantially in agreement with the tightening trend in currency cases. *Regalado Cuellar v. United States*, 128 S.Ct. 1994

5

(2008). Although *Cuellar* involved money-laundering, it is substantially related to currency forfeitures, and Claimants suggest it signals the Supreme Court is trending in the same manner as the Seventh Circuit when it comes to currency-only cases. Further, the case involved a question of the sufficiency of the evidence, but still suggest a trend of requiring evidence to sustain a currency case to be specific.

In *Cuellar*, the defendant was stopped for a driving violation. *Cuellar*, 128 S.Ct. at 1997. During the course of the stop, officers noticed the defendant, who did not speak English, avoided eye contact, seemed nervous, and gave conflicting accounts of his itinerary. *Id.* Additionally, although defendant claimed to be on a business trip he had no luggage. *Id.* A trooper asked defendant about a bulge in his shirt and defendant removed a "wad of cash that smelled of marijuana." *Id.* at 1998. The trooper summoned a narcotics dog and the dog alerted to the rear compartment, a search reveled a specially made compartment secreting $81,000. *Id.*

Defendant was charged with attempting to transport the proceeds of unlawful activity across the border pursuant to 18 U.S.C. § 1956(a)(2)(B)(i). *Id.* Defendant was found guilty. *Id.* Initially, the Fifth Circuit reversed; however, the appellate court granted a rehearing *en banc* and affirmed the conviction. *Id.* at 1998-99.

The Supreme Court reversed. In a unanimous opinion the Court held, "[w]e agree with petitioner that merely hiding funds during transportation is not sufficient to violate the statute, even if substantial efforts have been expended to conceal the money." *Id.* at 2003. The definitive point to be noted here, is that even with the laundry list of alleged, suspicious factors, the Supreme Court ignored them all. The Court focused merely on the secreting of the money and stated its agreement with the Fifth Circuit's Judge Smith's distinction between "'concealing something to transport it, and transporting something to conceal it." *Id.* at 5.

6

While the facts and underlying charge in *Cuellar* differ from the case at bench, the signal sent down from the Supreme Court rings loud and clear. The High Court will not countenance mere conclusory allegations so often loosely thrown about in money-only cases. It is all to often in money cases that the government does not have any evidence of a crime. Rather, the government pieces together a series of allegations regarding the mode of travel, packaging of the money, inconsistent statements, and the inevitable and allegedly infallible, narcotics-sniffer dog[3]. The recent pronouncements from the courts signal a reversal in direction of accepting the government's bare, conclusory, statements of fact in support of currency-only complaints. *See e.g., Bell Atlantic*, 127 S.Ct. at 1964-65 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations. . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (citations omitted).

These cases support the argument raised in the motion to dismiss, the courts have moved toward a more stringent standard of pleading. Likewise, the Court must review the complaint consistent with the stricter standard. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S.Ct. at 1965. ("'[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'")(citations omitted.) This is precisely why the Complaint fails.

The entire complaint is based on mere conjecture or speculation of criminal activity. The complaint sets forth speculative facts in a formulaic method, which differs little than any other money-only forfeiture complaint. This is because the government has no knowledge of any

---

[3] It is notable the Supreme Court paid little attention to the purported narcotics sniffer dog's alert in *Cuellar*. Indeed, the alert was mentioned only in the statement of facts.

specific facts other than the time and date of travel. Should the government's complaint make it past dismissal, the government will attempt to use discovery in order to develop its case.

However, these discovery fishing expeditions have been roundly criticized by the courts. The Seventh Circuit has previously stated,

> We reiterate that the government may *not* seize money, even half a million dollars, based on its bare assumption that most people do not have huge sums of money lying about, and if they do, they must be involved in narcotics trafficking or some other sinister activity. Moreover, the government may not require explanations for the existence of large quantities of money absent its ability to establish a valid narcotics-nexus. *United States v. $506, 231.00 in U.S.C.*, 125 F.3d 442, 454 (7th Cir. 1997).

Similar to *$506,231.00*, the appellate court in *Smith*, affirmed a claimant's due process protections when the government seeks to forfeit property. *Smith*, 524 F.3d at 838. *Cf. $506,231.00*, 125 F.3d at 454. ("We are certainly not the first court to be 'enormously troubled by the government's increasing and virtually unchecked use of the civil forfeiture statutes and the disregard for the due process that is buried in those statutes.'")  The recent *Twombly* decision echoes a similar concern for using discovery as a fishing expedition. *See generally, Bell Atlantic*, 127 S.Ct. at 1966-67 (citing Easterbrook, Discovery as Abuse, 69 B.U.L.Rev. 635 (1989)).

**B. Reviewing the Complaint within a stricter pleading framework demonstrates the Complaint fails to plead with sufficient particularity and should be dismissed.**

The Claimants posed the question of whether the complaint failed because the complaint is "facially deficient in that it fails to allege an act or acts giving rise to a cause of action with 'a substantial connection between the [defendant] property and the offense' under 21 U.S.C. § 881 (a)(6) and probable cause." Claimants' Motion at ¶ 7. The Claimants argue the government has failed to allege any facts which support a substantial connection between the property and any criminal offense as required by the heightened standard in the statute. Noticeably in the

8

government's answer the operative statute, 18 U.S.C. § 983 (c)(3), is never controverted, distinguished, or even mentioned.

In general, the federal standard in pleading has traditionally been notice pleading. There are certain situations in which Congress and the Supreme Court have required more discriminating standards. For example, pleading fraud has long been subject to the requirement of pleading facts with particularity. FED.R.CIV.P. 9. *See e.g., Tellabs*, 127 S.Ct. 2504-05. Congress has also heightened the pleading standard in certain types of forfeitures; to wit, forfeitures of currency.

It is uncontested by the government, Congress intended to heighten the requirements for forfeitures when the governments' theory for forfeiture is, the defendant property was used to commit or facilitate the commission of a criminal offense. 18 U.S.C. § 983(c)(3). As detailed in Claimants' motion to dismiss, this was a direct and proximate result of the government's history of abuse of the forfeiture laws in place at the time CAFRA was enacted; hence, Congress' use of the term "Reform Act." The government silently concedes this point.

The government instead attempts to change the issue and claims the Court must construe all facts plead as true and in a light most favorable to the government. Ans. at 7. This is not the same question; Claimants contend the complaint fails to plead sufficient facts. Thus, without pleading additional facts, it is impossible for the Court to treat them as true in the first instance. Moreover, the government's argument runs counter to the heightened standard imposed by 983(c)(3); the government is merely reciting the old *Conley* standard applicable to a run-of-the-mill complaint absent a Congress-imposed increase in the pleading standard. *See Twombly, ante*.

Congress chose to discriminate between cases involving currency and other types of contraband because of the potential for abuse. The key difference with currency cases is logically because currency is not contraband, *per se*. In order to prevent the public perception of

9

the government conducting contingent fee law enforcement, Congress chose to reform forfeiture law and specifically discriminated cases involving property or currency allegedly used to facilitate a crime and those cases involving contraband, *per se*, *e.g.* narcotics.

The intended safeguard of CAFRA in practice was through the implementation of a heightened burden imposed on the government at the pleading stage. 18 U.S.C. § 983(c)(1)-(c)(3); 18 U.S.C. § 983 (a)(3)(A); FRCP Supp AMC Rule G(2)(f). After reviewing the appropriate sections to Section 983 in conjunction with Supplemental Rule G, it should be apparent to the government the requirements imposed upon it. Section 983(a)(3)(A) instructs the government, the complaint must be in accordance with the Supplemental Rules of Admiralty and Maritime Claims. In order to state a valid cause of action, Supplemental Rule G(2)(f), provides, "[t]he complaint must: * * * (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Thus, a complaint must allege <u>facts</u> to overcome its burden of proof at trial. *Id.* Section 983(c)(1) provides the relevant burden of proof on the government in this currency-only case at Bench. That section requires the government to prove by a preponderance of the evidence the property is subject to forfeiture. Section 983(c)(3) provides the additional *caveat,* the government must demonstrate a substantial connection between the currency and the offense. *See also*, Supp AMC Rule E(2)(a) (requires complaint to plead facts with particularity.)

The government provides no argument as to why the Court should ignore the plain language of Section 983. Basic statutory construction mandates the Court must interpret Section 983(c)(3) as imposing a heightened requirement on the government for the contrary reading makes the language meaningless. Moreover, Supplemental Rule G(2)(f) affirms the Claimants arguments regarding Section 983(c)(3). It provides, in pertinent part,

> (2) Complaint. The complaint must:
>
> * * *
>
> (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

This language makes it unambiguous, Congress intended § 983(c)(3) to apply to complaints for forfeiture under a theory of facilitation. An assessment of the complaint reveals no facts, which would support a reasonable belief the government will be able to meet its burden of proof at trial.

**C. The Complaint fails to satisfy Supplemental Rule E(2)(a) requirements**

As argued above, in a case in which the government's theory rests upon the property being used to facilitate a criminal offense, the government must demonstrate a substantial connection between the property and the purported offense. The complaint is utterly devoid of any facts which demonstrate a substantial connection with any criminal offense.

The Government's Complaint is facially deficient in that it fails to allege an act or acts giving rise to a cause of action with "a substantial connection between the property and the offense" under 21 U.S.C. § 881(a)(6) and probable cause. *Id.* In the case at Bench, the complaint fails to allege any title 21 U.S.C. criminal act that is the basis of the forfeiture. It does not allege any narcotics transaction took place. The complaint fails to plead the Claimant made inconsistent statements. The complaint does not allege <u>any</u> act whereby a controlled substance was exchanged for the currency seized, as required by 21 U.S.C.§ 881(a)(6) or a substantial connection to any criminal act as required by 18 U.S.C. § 983(c)(3). The government bases its entire complaint on the purported alert on the Claimant's luggage by a DEA canine, "Rudy." Allegations a Claimant fits a "drug courier profile" coupled with a positive dog sniff are insufficient to establish probable cause to believe the Claimant's funds are linked to an illicit drug transaction. *See*

*United States v. $84,000 United States Currency*, 717 F.2d 1090, 1099 (7th Cir. 1983); *$506,231 in U.S.C.*, 125 F.3d at 453.

Just as the Court should consider what the complaint does not plead, so should it consider what the complaint admits. The government argues it can prove the following to support its case, (1) Lynch arrived in New York the day before his travel to Las Vegas; (2) he was carrying cash and traveler's checks in Chicago; (3) purportedly the currency and checks were in the recent presence of narcotics; (4) Lynch refused to identify his friends by name. It is hard to imagine these bare bone statements support any conclusion, let alone, a conclusion Mr. Lynch was involved in narcotics trafficking.

The first allegation does not demonstrate a substantial connection with narcotics. The government will never be able to prove at trial, Mr. Lynch was not going to Las Vegas to gamble. The Court is also free to make this inference as it undeniable Las Vegas is internationally known as a gambling destination. Indeed, the government claims this fact supports its case, but it actually deeply hurts it. The Court should draw the most reasonable inference from this allegation; to wit, Mr. Lynch was going to Las Vegas to gamble. *See e.g., Tellabs*, 127 S.Ct. 2509-10 (in determining inferences from pleaded facts, the court must take into account plausible opposing inferences.) Claimants suggest the most plausible and reasonable inference in this case is Mr. Lynch was a gambler on his way to Las Vegas.

The next allegation concerns the money and traveler's checks. Claimants remind the Court the Complaint actually names two (2) Defendants: Defendant Currency and Defendant Traveler's Checks. A Westlaw search of the federal courts did not provide any cases where the government was attempting to forfeit traveler's checks from a purported drug courier. The government has provided no explanation on how the possession of traveler's checks is indicative of the drug

trade.  Moreover,  the Court should note the Complaint alleges the traveler's checks were purchased in London. Comp. at ¶9.  This fact alone demands the Complaint should be dismissed as to Defendant Traveler's Checks.  It will be utterly impossible for the government to prove any case against traveler's checks purchased outside the jurisdiction of the United States.  Thus, as an initial matter, the Court should dismiss the Complaint against Defendant Traveler's Checks.

The government is also silent as to another unique characteristic concerning Defendant Currency.  The government alleges the currency consisted of 1315 one hundred dollar bills. Comp. at ¶11.  This runs counter to the usual claims of the government in currency forfeiture cases. Indeed, the government usually claims the exact opposite; for the government, the possession of a large amount of **small** denomination bills is indicative of the drug trade.  *See e.g.*, *United States v. $50,040 in U.S. Currency*, 2007 WL 1176631 at 4. (N.D.Cal. 2007); *$506,231*, 125 F.3d at 452 (government claimed a large amount of cash in small denominations supported probable cause of connection to narcotics.)   The government cannot have it both ways.  If possession of a large amount of small denomination bills suggests connection with narcotics, then the Court should infer the possession of a *Res* containing only one, large denomination bill does not support the government's case.

The government's allegation regarding the dog alert is also a stretch.  The complaint alleges the narcotics-sniffer dog "gave a positive alert for the presumptive presence of narcotic odor on the bag containing the seized currency." Comp. at ¶ 10.  However, in its answer the government transmutes this allegation, and now claims it will be able to prove the currency and traveler's checks were in the recent presence of narcotics because of the alleged dog alert.  Claimant does not waive any right to contest the reliability of the alleged alert by "Rudy."  However, even assuming the allegation in the complaint to be true, the government cannot prove an allegation

regarding the actual *Res*, because the dog never sniffed the currency or the checks. The government admits the dog only sniffed the bag. *Id.*

The government's final allegation is, Lynch refused to provide the names for his friends. Actually, the complaint does not say Lynch refused, it says he did not provide any names. Comp. at ¶ 9. However, this allegation is also not facially suspicious. Mr. Lynch was not under any obligation to answer any questions in the first instance. Moreover, it does not seem particularly suspicious an individual would refuse to provide names of friends to law enforcement officers during an interrogation. Finally, even assuming this to be true, the government fails to provide any reasoning as to why this fact is particularly indicative of the narcotics trade.

Viewing the circumstances in the totality, the government has strung together four weak allegations and claims the *Res* is subject to forfeiture. To say this presents the Court with a very tenuous case is an understatement. The only logical and reasonable inference the Court should consider is, Mr. Lynch was traveling to Las Vegas to gamble. If the government believes something more nefarious is at issue, it should be required to plead sufficient facts to back up this claim. On the facts alleged, even if proven, it is doubtful any reasonable jury could conclude Mr. Lynch was not just another tourist on his way to Las Vegas to gamble.

In sum, the complaint describes a naked seizure of the Defendant *Res*, which was arrested for traveling through Union Station in Chicago, Illinois. The bare facts contained in the four corners of the complaint fail to plead any facts with particularity, which demonstrate a substantial connection between the property and any criminal offense. Pursuant to the above noted Supplemental Rules and Statutes, the government must plead facts which establish the who, what, where and how demonstrating a reasonable basis to believe the currency is forfeitable pursuant to 21 U.S.C. § 881 (a)(6), 18 U.S.C. § 983 (c)(3) and in accordance with Supplemental

Rules E and G. The failure to plead any such facts means the government will find it impossible to prove its case at trial; thus, the complaint must be dismissed for failing to state a cause of action. FED.R.CIV.P. 12(b)(6).

### III. Conclusion

WHEREFORE, for the foregoing reasons, the Claimants, RICHARD LYNCH and STEPHEN M. KOMIE, pray this Honorable Court enter an order dismissing the Complaint in this matter for failing to state a cause of action with prejudice.

                    Respectfully submitted,

                    RICHARD LYNCH,
                    By and through his attorneys,
                    KOMIE AND ASSOCIATES

                    By: /s/ Stephen M. Komie
                          Stephen M. Komie

Stephen M. Komie
Komie and Associates
One North LaSalle Street, Suite 4200
Chicago, Illinois 60602
312.263-2800