IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08 C 1377 |
| ) | |
| **FUNDS IN THE AMOUNT OF ONE** ) | |
| **HUNDRED THIRTY-ONE THOUSAND** ) | |
| **FIVE HUNDRED DOLLARS, ($131,500.00)** ) | |
| **in U.S. CURRENCY, AND TWO** ) | |
| **HUNDRED TWENTY-TWO AMERICAN** ) | |
| **EXPRESS TRAVELER'S CHECKS IN** ) | |
| **THE AMOUNT OF ONE HUNDRED** ) | |
| **ELEVEN THOUSAND DOLLARS,** ) | |
| **($111,000.00),** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The United States filed this action seeking forfeiture of $131,500 in U.S. currency and $111,000 in traveler's checks seized from an Amtrak passenger on October 9, 2007. The passenger, Richard Lynch, and Steven Komie, his attorney (the "claimants"), have filed claims to the funds. Claimants have moved to dismiss the government's complaint for failure to meet the heightened pleading standards that apply in civil forfeiture actions. For the reasons set forth below, the Court denies claimants' motion.

### Facts

The Court takes the following statement of facts from the government's complaint in this case.

On October 9, 2007, federal Drug Enforcement Agency officers assigned to Amtrak Union Station in Chicago conducted what they term a routine investigation of Amtrak's travel manifest and obtained information that on October 8, 2007, passenger Richard Lynch had paid cash for a one-way sleeping car ticket from New York City to Las Vegas via Chicago.

At approximately 3:00 pm on October 9, agents entered Lynch's sleeping car. They later observed Lynch enter his assigned room carrying at least two pieces of luggage. They identified themselves as federal agents and asked to conduct an interview, to which Lynch consented. The agents told Lynch that he was not under arrest and requested his identification and train ticket. After confirming Lynch's identity, they obtained his consent to search his luggage. The agents say that Lynch appeared agitated as he paced the room and that he began to perspire during the search. The agents discovered several bundles of U.S. currency wrapped in Saran Wrap and newspaper in Lynch's backpack. The agents say that at this point, Lynch appeared nervous and fidgety, so as a precautionary measure, one of the agents patted Lynch down and discovered a bulge, which Lynch stated was approximately $200,000 in currency.

Lynch was taken to the DEA office in Union Station, where, the agents say, he agreed to answer additional questions and signed a consent form for the search of his luggage. The agents searched a second piece of luggage in Lynch's possession and found additional U.S. currency. Lynch told the agents that a friend had given him $130,000 in New York to give to another friend from London to whom he owed money. Lynch said he had been told to take the money to Las Vegas, where he would meet the

friend from London.  The agents say Lynch did not give the two friends' names.

A DEA agent then brought in narcotic detector dog named "Rudy" to examine Lynch's luggage.  The government alleges that Rudy is certified annually by the DEA and has made over fifty narcotic "finds" on currency, with no false positives.  Rudy reacted positively to the bag containing the seized currency.

In total, the agents seized $131,500 in $100 bills and $111,000 in American Express traveler's checks.  On March 7, 2008, the government filed this action for forfeiture, alleging that the funds were furnished and intended to be furnished in exchange for a controlled substance, are the proceeds from the sale of a controlled substance, or were monies used and intended to be used to facilitate narcotics trafficking, and are therefore subject to forfeiture and condemnation pursuant to 21 U.S.C. § 881(a)(6).

## Discussion

Claimants have moved to dismiss on the ground that the government has failed to state a claim for forfeiture under 21 U.S.C. § 881(a)(6).  Under that provision, "[a]ll moneys [and] negotiable instruments . . . intended to be furnished by any person in exchange for a controlled substance, . . . all proceeds traceable to such an exchange, and all moneys [and] negotiable instruments . . . used or intended to be used to facilitate any violation of this subchapter," that is, a prohibited narcotics transaction, are subject to forfeiture.  21 U.S.C. § 881(a)(6).

By virtue of the Civil Asset and Forfeiture Reform Act (CAFRA), adopted in 2000, "in a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property, the burden of proof is on the government to establish, by a preponderance of

the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). In addition, if the government's contention is that the property was used to commit or facilitate or was involved in the commission of a crime, "the government must establish that there was a substantial connection between the property and the offense." *Id.* § 983(c)(3).

The standard for pleading a complaint in a civil forfeiture action is supplied by the Supplemental Rules for Certain Admiralty and Maritime Claims. *See* 18 U.S.C. § 983(a)(3)(A). Under Rule G(2)(f) of the Supplemental Rules, a civil forfeiture complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Thus, the government's complaint in this case must provide facts sufficiently detailed to support a reasonable belief that the government will be able to prove by a preponderance of the evidence that the money and traveler's checks seized from Lynch were to be used in or to facilitate a narcotics deal or were proceeds of a narcotics deal, and that the property had a substantial connection to a narcotics offense.

Claimants argue that there is a trend favoring increased scrutiny of civil complaints generally and narcotics forfeiture cases specifically. It is unclear to the Court whether claimants are saying that this should lead the Court to apply a stricter pleading standard than the one set forth in the Supplemental Rules or simply that this trend should inform the Court's application of the standard contained in the Supplemental Rules. Either way, the Court does not see the cases claimants cite as adding anything to the analysis beyond what the Supplemental Rules and CAFRA already require.

First, claimants rely on the Supreme Court's statement in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), that a complaint's factual allegations "must be enough to raise a right to relief above the speculative level" and its quotation of a noted commentator to the effect that a complaint "'must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.]" *Id.* at 1965 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 at 235-36 (3d ed. 2004)).  The Court does not believe that *Bell Atlantic* has any material impact on the analysis in this case.  That decision concerned the adequacy of a complaint under Federal Rule of Civil Procedure 8(a)(2), *see id.* at 1964, not under the already-stricter standard set forth in Supplemental Rule G(2)(f).  And even if *Bell Atlantic* applies, the Seventh Circuit has made it clear that the two hurdles the case established are "easy-to-clear":  the complaint must provide enough detail to give the defendant fair notice of the claim and its basis, and the plaintiff's allegations "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level."  *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal citations and quotation marks omitted).  The government's complaint quite plainly clears the first of these hurdles; claimants do not argue otherwise.  And the Seventh Circuit's expression of the second hurdle adds nothing to the Court's analysis in this case beyond the requirement in Supplemental Rule G(2)(f) that a civil forfeiture complaint contain "sufficiently detailed facts to support a reasonable belief" that the

government can meet its burden.[1]

Claimants also rely on *Cuellar v. United States*, 128 U.S. 1994 (2008), which they contend signals a "tightening trend in currency cases." Claimants' Reply at 5. *Cuellar*, however, concerned the requirements for providing the criminal offense of money laundering. It has nothing to do with the pleading standards applicable in civil forfeiture cases.

*Smith v. City of Chicago*, 524 F.3d 834 (7th Cir. 2008), also cited by claimants, likewise has nothing to do with the issues before the Court. *Smith* concerned the adequacy, under due process standards, of the procedures for forfeiture of seized automobiles under an Illinois statute. Claimants have not advanced a due process challenge to the federal narcotics forfeiture statute. *Smith* says nothing about how a court should review the sufficiency of a civil complaint under that or any other forfeiture statute.

The Court turns to whether the government's complaint meets the requirements of Supplemental Rule G(2)(f). Claimants argue that the complaint fails to allege acts indicative of a substantial connection between the seized property and a narcotics offense. They assert that the allegedly positive dog sniff does not establish a substantial connection between the currency and illegal narcotics and that the government has not identified any particular criminal act that is the basis for the forfeiture. Claimants rely on *United States v. $506,231 in United States Currency*, 125

---

[1] *Tellabs Inc. v. Makor Issues and Rights, Ltd.*, 127 S. Ct. 2499 (2007), also cited by claimants, concerns the pleading standards under the Private Securities Litigation Reform Act; it has nothing to do with the standard for pleading in a civil forfeiture case.

F.3d 442 (7th Cir. 1997), in which the court stated that "the probative value of dog sniffs is, at most, minimal." *Id.* at 453. In that case, the government "admit[ted] that no one can place much stock in the results of dog sniffs because at least one-third of the currency in the United States is contaminated with cocaine in any event." *Id.* More recently, however, the Seventh Circuit relied on the results of a positive dog sniff of currency, together with other evidence, to support a conclusion that there was a substantial connection between the currency and illegal narcotics. *See United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 467 (7th Cir. 2005). In that case, the government introduced evidence tending to show that in most circumstances, a drug-sniffing dog's positive reaction to currency "indicate[s] that the currency is not innocently tainted, but instead tainted through contact or close proximity to illegal narcotics." *Id.* at 461.

It remains to be seen what the evidentiary record ultimately will establish in this case. The Court concludes, however, that as the law now stands in this Circuit, allegations regarding the results of a positive dog sniff, at least in combination with other evidence, are not deficient as a matter of law to establish the government's burden in a forfeiture case, which is essentially what claimants ask the Court to hold.

Though claimants attack the sufficiency of other allegations in the government's complaint, those arguments are better addressed on summary judgment or at trial than at the pleading stage. The government's allegations regarding the positive dog sniff, Lynch's last-minute travel arrangements, the very large amount of currency he was carrying, and his arguably questionable explanation for why he had the currency are sufficient, taken together, to support a reasonable belief that the government will be

7

able to prove by a preponderance of the evidence that the seized currency and traveler's checks are subject to forfeiture under section 881(a)(6). That is not to say that the government will prevail; assessment of the actual sufficiency of the evidence is an issue for another day. The only question at this stage is whether the government has met its pleading burden. The Court concludes that the government has done so.

## Conclusion

For the reasons described above, the Court denies claimants' motion to dismiss [docket no. 13] and sets the case for a status hearing on August 28, 2008 at 9:30 a.m. for the purpose of setting a schedule for completing discovery. Counsel are directed to confer prior to that date so that they can propose a schedule to the Court.

                                                                   _____
                                                                   MATTHEW F. KENNELLY
                                                                   United States District Judge

Date:  August 12, 2008